IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:16-CV-20343-DMM

MELANIE E. DAMIAN, as Receiver of Hunter
Wise Commodities, LLC, Hunter Wise
Services, LLC, Hunter Wise Credit, LLC,
and Hunter Wise Trading, LLC,

   Plaintiff,

v.

INTERNATIONAL METALS TRADING &
INVESTMENTS, LTD. and BILL PERRY,

   Defendants.
_____/

## ORDER AND OPINION DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Plaintiff Melanie E. Damian's, as Receiver (the "Receiver") of Hunter Wise Commodities, LLC, Hunter Wise Services, LLC, Hunter Wise Credit, LLC, and Hunter Wise Trading, LLC (the "Hunter Wise Entities"), Motion for Summary Judgment ("Motion"), filed on May 19, 2017. (DE 62). Defendant International Metals Trading & Investments, Ltd. ("International Metals") has not appeared in this action.[1] *Pro Se* Defendant Bill Perry ("Perry," with International Metals, "Defendants") recently filed a Motion for Jury Trial or Dismissal (DE 68), which the Court denied (DE 69), but has not otherwise responded to the instant Motion despite multiple extensions of time. For the reasons stated below, the Motion is denied.

### I. BACKGROUND

This action was brought pursuant to the Receiver's powers and responsibilities, as defined by the Court in the action styled *United States Commodity Future Trading Comm'n v.*

---

[1] The Receiver had previously filed a Motion for Default Judgment (DE 28), which remains pending as to International Metals.

*Hunter Wise Commodities, LLC, et al.*, Case No. 12-81311-CIV-Middlebrooks (the "Receivership Action"). (PSOF at ¶¶ 1-3).[2] The underlying claim in the Receivership Action concerned the Hunter Wise Entities' violation of the Dodd-Frank Act. That violation, orchestrated by Hunter Wise's principals, was based on a scheme to defraud customers by enticing them to purchase physical precious metals through intermediary dealers (*Id.* at ¶¶ 13-17), when in fact the customers did not receive title to any physical metals and the HW entities did not possess or store metals on their behalf. (*Id.* at ¶ 28). Rather, the customers' orders were ultimately aggregated into Hunter Wise's own derivative trading accounts for metal futures or forward contracts. (*Id.* at ¶ 29). Hunter Wise compensated dealers involved in the scheme "with a portion of the fees and charges paid by the customers for the transactions." (*Id.* at ¶ 24). After protracted litigation initiated by the CFTC, the Court issued an Order of Final Judgment, Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief against the Hunter Wise Entities, which ordered those entities and their principals to pay restitution to their customers. (*Id.* at ¶ 69; *see* Receivership Action, DE 306).

The record in this case establishes that International Metals was one of the dealer entities that "signed up to become a dealer for the HW Entities." (PSOF at ¶ 73). Perry "was the sole principal and owner" of International Metals and managed its operations. (*Id.* at ¶ 74). While managing International Metals, he "discovered [or] was otherwise aware that the HW Entities were conducting a fraudulent scheme." (*Id.* at ¶ 75). Between October 10, 2009 and October 7, 2011, Perry transferred his own or his company's funds "to purchase 100 ounces of gold bars and 200 ounces of palladium from the HW Entities." (*Id.* at ¶ 76). Between July 26, 2011 and

---

[2] Pursuant to Local Rule 56.1(a), the Receiver included a Statement of Undisputed Material Facts in the same document as the instant Motion. (DE 62 at 2-16). The Receiver's Statement is styled "PSOF" (Plaintiff's Statement of Facts). Many of the facts are based on unanswered Requests for Admission (DE 62-2). I discuss the permissibility of establishing undisputed facts based on unanswered requests for admission below.

2

February 2, 2012, one of the HW Entities, HW Credit, transferred a total of $564,335.59 in four separate transactions to International Metals. (*Id.* at ¶ 77 & Ex. C). These funds were then transferred from International Metals to Perry. (*Id.* at ¶ 78). None of these transferred funds were subsequently transferred to any customer of the HW Entities or International Metals. (*Id.* at ¶ 79). Nor did Defendants send or introduce customers to the HW Entities, provide any other services on behalf of the HW Entities, or transfer the money of any customers to the HW Entities. (*Id.* at ¶ 81).

The Receiver filed this action on January 29, 2016. (*See* DE 1, "Compl."). The Receiver brings three causes of action against Defendants, two for fraudulent transfer under a California state statute (Compl. at ¶¶ 59-68; 69-79) and one for common law unjust enrichment (*id.* at ¶¶ 80-84). Perry has sought numerous times to dismiss the Complaint on various jurisdictional and procedural grounds, which the Court has rejected. The instant Motion then followed.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)(1)(A)). Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court [] that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the movant has met its burden under Rule 56(c), the burden shifts to the non-moving party

to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).

Although all reasonable inferences are to be drawn in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come forward with "specific facts showing that there is a *genuine issue for trial*." *Id.* at 587 (citing Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the non-moving party fails to make a sufficient showing on an essential element of her case on which she has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

### III. DISCUSSION

The first question before the Court is whether the facts offered by the Receiver are conclusively established. Except for the financial records of transfers of funds between the HW Entities and International Metals, all purported evidence derives from unanswered Requests for Admission ("RFAs"), which the Receiver faxed to Perry during the discovery period. The Receiver argues that under Federal Rule 36, Perry's failure to respond to the RFAs within the given period – or in this case, at all – results in the statements therein being deemed admitted. For the most part, I agree.

4

Rule 36(a) provides that after an RFA is properly served on an opposing party, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. R. 36(a)(3). The Eleventh Circuit confirms that "unanswered requests serve[] as the 'admissions on file.'" *United States v. 2204 Barbara Lane*, 960 F.2d 126, 129 (11th Cir. 1992); *see also Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1265, n.1 (11th Cir. 2003); *Gutierrez v. Cable Equip. Serv., Inc.*, 620 F. App'x 882 (11th Cir. 2015). The *Barbara Lane* Court acknowledged that it may be inappropriate to rely on unanswered RFAs if the "defendant never received actual or constructive notice of" their contents. *Barbara Lane*, 960 F.2d at 129. That does not appear to be the case here. In addition to be being served by the Receiver with RFAs and the instant Motion, Perry has been informed by the Court multiple times about the importance of examining and responding to the Motion. Accordingly, Perry is at the very least on constructive notice of the RFAs.[3] Further, *Barbara Lane* noted that automatic admissions are justified when the responding party has engaged in "dilatory tactics." *Id.* Here, Perry has thwarted an efficient resolution of this case at multiple turns. He has alternately dropped out of contact with the Receiver and the Court, failing to defend the claims against him, only to reemerge once the case has developed to barrage the Court with often frivolous motions.[4] At the same time, some of the RFAs ask Perry admit to

---

[3] Nor is this the kind of case, contemplated by the Eleventh Circuit, where the non-responsive party subsequently files a motion to withdraw an admission. In that case, the Court must examine whether "the presentation of the merits will be subserved" and whether the requesting party will be prejudiced by allowing the withdrawal. Fed. R. Civ. P. 36(b); *Perez v. Miami-Dade Cty.*, 297 F.3d 1255, 1266-69 (11th Cir. 2002). Because he has not responded to this Motion, Perry has not even sought to withdraw the admitted RFAs.

[4] Indeed, the Court was prepared to grant the Receiver's Motion for Default Judgment (DE 28) in November, 2016, which was pending for two weeks, when Perry appeared for the first time to respond to the claims (DE 30). In its discretion, the Court vacated entry of default and treated Perry's response as an Answer and Affirmative Defense. (DE 31). Since then, Perry has not

legal conclusions rather than to facts or applications of law to facts. "Rule 36 is a time-saver, designed to expedite the trial and relieve the parties of the cost of proving *facts that will not be disputed at trial.*" *Perez v. Miami-Dade Cty.*, 297 F.3d 1255, 1268 (11th Cir. 2002) (citation omitted) (emphasis in original). It is not meant to allow a party to avoid the burden of proving legal characterizations that may or may not attach to those facts. *Disability Rights Council v. Wash. Metro. Area*, 2345 F.R.D. 1, 3 (D.D.C. 2006). Therefore "a party may not seek an admission of a legal conclusion." *In re Tobkin*, 578 F. App'x 962, 964 (11th Cir. 2014). In addition, certain other questions invited Perry to state his opinion on the subjective intent of third party actors. While the current version of Rule 36 permits a requesting party to solicit opinions, a responding party, in making a reasonable inquiry, is not required "to interview or subpoena records from independent third parties in order to admit or deny" an RFA. *United States ex rel. Englund v. Los Angeles Cty.*, 253 F.R.D. 675, 685 (E.D. Cal. 2006).

In sum, Rule 36(a)'s general provisions apply. The statements for which the Receiver sought admissions are admitted and constitute undisputed facts to the extent those statements ask for factual admissions, rather than legal conclusions or opinions on a third party's internal affairs. I now turn to whether the admitted facts show that the Receiver is entitled to judgment as a matter of law on her claims.

### A. *Fraudulent Transfer*

The Receiver argues that Defendants are beneficiaries of a fraudulent transfer under California's Uniform Fraudulent Transfer Act (UFTA). She points specifically to Section 3439.04 of the California Civil Code, which renders a transfer voidable "as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred" under certain circumstances. Ann. Cal. Civ. Code § 3439.04(a). There are two potential theories

---

cooperated in the discovery process and made only conclusory demands that this case be dismissed.

6

underlying statutory fraudulent transfer: "actual fraud" and "constructive fraud." *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008). The Receiver claims that both apply to the transfer made to Defendants and states separate causes of action for each. I address each theory in turn.

1. Section 3439.04(a)(1): Actual Fraud

This subsection states that a transfer is fraudulent when the debtor makes the transfer "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Ann. Cal. Civ. Code § 3439.04(a)(1). Intent to defraud is "a question of fact to be determined by a preponderance of the evidence." *In re Beverly*, 374 B.R. 221, 235 (B.A.P. 9th Cir. 2007). There is no question that HW Credit made a transfer of $564,335.59 to International Metals through four separate checks. The record also establishes that International Metals transferred these funds to Perry. The question is whether there is undisputed evidence that these transfers were made with the "intent to hinder, delay, or defraud any creditor of the debtor." *Id*. Such intent can be assumed where the conspiracy at issue is a Ponzi scheme. *Donnell*, 533 F.3d at 770. However, that is not alleged to be the case here.

The Receiver requested Perry admit that the HW Entities made transfers to its dealers with the intent to hinder, delay, or defraud customers or creditors. (DE 62-2 at ¶ 11). Of necessity, that request calls for Perry to speculate on the intent of the HW Entities in transactions with each and every one its dealers. But without further investigation on his part, Perry would have knowledge only about the circumstances of his own dealings with the HW Entities. As discussed above, this RFA likely exceeds the bounds of a reasonable inquiry that one can expect a responding party to make. *See Englund*, 253 F.R.D at 685.

The Receiver also refers to the Court's final judgment against the HW Entities in order to establish the overall organization of the scheme. But whether the HW Entities *generally* had a fraudulent purpose in making transfers to these dealers does not establish whether they had such

7

a purpose in making these particular transfers to Defendants. That depends on the "surrounding circumstances," which may vary according to dealer. *See In re Ezra*, 537 B.R. 924, 930-31 (B.A.P. 9th Cir. 2015) (court should look to statutorily enumerated "badges of fraud" to determine whether particular transfer was fraudulent). Context is especially relevant here, where it is unclear what role Defendants played in the overall scheme. The Receiver argues that the HW Entities compensated dealers with kickbacks of portions of the fees and charges that the dealers extracted from the very customers they solicited. (PSOF at ¶¶ 24, 29). This was done to "incentivize" dealers to draw in more customers, a motivation the Receiver cites as proof of fraudulent intent. (*Id.* at 18). Yet at the same time, the Receiver also proves through admissions that Defendants did not have any customers who sought to purchase metal; did not introduce any customers to the HW Entities; and did not provide any services for the benefit of the HW Entities. (*Id.* at ¶ 81). On these facts, it is hard to understand why the HW Entities would reward a dealer who did not contribute customers to the scheme. The motivation behind the payment of $564,335.59 remains an unresolved piece of the puzzle. Accordingly, summary judgment on this claim is not warranted.

2. Section 3439.04(a)(2): Constructive Fraud

"Constructive" or "implicit" fraud exists when the debtor does not receive "a reasonably equivalent value in exchange for the transfer or obligation and the debtor either: (A) was engaged or was about to engage in" a leveraged transaction that would leave its "remaining assets" "unreasonably small" or "(B) intended to incur, or believed or reasonably should have believed that [it] would incur, debts beyond [its] ability to pay as they became due." Ann. Cal. Civ. Code § 3439.04(a)(2). In contrast to the intent issue in actual fraud, the determination of whether a transfer was exchanged for insufficient consideration is a legal question. *In re Prejean*, 994 F.2d 706, 708 (9th Cir. 1993). The Receiver argues that Defendants' unanswered

8

RFAs establish that they did not exchange anything of value for the four payments from HW Credit. Thus, the Receiver believes that Defendants admit a pure conclusion, something RFAs cannot achieve. Even if this were a factual question, the cited RFAs do not necessarily support the stated proposition. The admissions show only that Defendants did not direct any customers to the HW Entities, transfer any customer's money, or perform any services for the HW Entities. (DE 62-2 at ¶¶ 15-21). But Defendants may still have offered consideration external to the scheme. Cryptically, the Motion alludes to Defendants' transfer of funds to the HW Entities to place an order of metals on their own behalf. (PSOF at ¶ 76). What relationship this order had with the temporally overlapping transfers back to Defendants is unclear. But it at least makes possible that Defendants had offered something of value. Moreover, neither of the options for constructive fraud's second prong is established because the RFAs that attempt to elicit them again call for Perry to render an opinion on aspects of HW Credit's affairs over which he is not competent to answer (i.e., their leveraged status or ability to repay debts). (*Id.* at ¶¶ 53, 56). Because there remain disputed issues of material fact, summary judgment as to this claim is also denied.

### B. *Unjust Enrichment*

At California common law, the elements of unjust enrichment are "[1] receipt of a benefit and [2] unjust retention of the benefit at the expense of another." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014) (quoting *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (Cal. Ct. App. 2000)), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017). The receipt of money is certainly a benefit. However, for the same reasons as discussed in connection with the statutory claims, it is not clear whether Defendants' retention of this money is unjust. Therefore, I cannot enter summary judgment on the unjust enrichment claim either.

## C. Conclusion

It may very well be the case that the Receivership is entitled to funds held by Defendants. However, even taking into account Perry's evasive tactics during discovery, the Receiver has not adequately developed the record to the point where her claims can be established as a matter of law. In particular, Perry's relationship to the HW Entities remains somewhat of a mystery. He apparently had a dealer agreement with the entities. But according to the facts cited by the Receiver, he recruited no customers of his own and at times acted a customer himself. Nor is there as yet any explanation for the source and purpose of the $564,335.59 in transfers. Although I hesitate to reward Perry's litigation conduct, I cannot offset these transgressions by awarding an undeserving summary judgment. It is hereby **ORDERED** and **ADJUDGED** that Plaintiff Melanie E. Damian's Motion for Summary Judgment (DE 62) is **DENIED**.

This case will proceed to a jury trial[5] (as requested by Perry) during the two-week trial period beginning July 24, 2017 at 9:00 a.m. Calendar Call will be held on July 19, 2017 at 1:15 p.m. All Parties must attend in person. The Court will proceed despite any Party's non-attendance.

**DONE AND ORDERED** in Chambers in West Palm Beach, Florida, this _13_ day of July, 2017.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record;

Bill D. Perry, *pro se*
112 Harvest Ln
Petersburg, IN 47567

Bill D. Perry, *pro se*
980 N. Michigan Ave
Suite 1400
Chicago, IL 60611

---

[5] Although UFTA does not specifically authorize jury trials, California courts hold that the statute does not supersede rights – jury trials being one – attached to common law claims for fraudulent conveyance that predated the statute's enactment. *Wisden v. Superior Court*, 124 Cal. App. 4th 750, 758 (Cal. Ct. App. 2004).